1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   BROOKE GARDNER, individually, and on          CASE NO. 10-CV-997 - IEG (CAB)
     behalf of a class of others similarly situated,
12                                                  ORDER:
                                    Plaintiff,
13          vs.                                     (1) DENYING PLAINTIFF'S
                                                    MOTION TO REMAND [Doc. No. 4];
14                                                  and
15   GC SERVICES, LP,                               (2) DENYING DEFENDANT'S
                                                    MOTION TO DISMISS, TRANSFER,
16                                  Defendant.      OR STAY [Doc. No. 2].
17

18          This is a putative class action alleging various claims for unpaid wages under California state

19   law. Currently before the Court are Defendant's Motion to Dismiss for Lack of Jurisdiction, to

20   Transfer to the Eastern District of Missouri, or to Stay Plaintiff's Claims, [Doc. No. 2], and Plaintiff's

21   Motion to Remand to State Court, [Doc. No. 4]. Having considered the parties' arguments, and for the

22   reasons set forth below, the Court **DENIES** both motions.

23                                      **BACKGROUND**

24   **I.      Multiple actions**

25          The present action is brought by Plaintiff Brooke Gardner ("Gardner"), individually and on

26   behalf of others similarly situated, against Defendant GC Services LP (hereinafter, the "*Gardner*

27   action"). Two earlier-filed actions are also relevant to the disposition of the motions currently pending

28   before the Court. The first one is an action brought by Darryl Easley, individually and on behalf of

1   others similarly situated, against GC Services LP and GC Services Corp. (hereinafter, the "*Easley*

2   action"). The second one is an action brought by Lora Meyers, Sherry Clere, Patricia Glass, Nota Jean

3   Barnes, Debra Davis, Cecilia Koster, Johnna Parker, Steven Christy, and Peggy Spurlock, on behalf

4   of themselves and others similarly situated, against GC Services LP (hereinafter, the "*Meyers* action").

5   Each of these is discussed in turn below.

6           A.      The *Easley* action

7           On October 20, 2009, Darryl Easley, a Missouri resident and former employee at one of GC

8   Services' Missouri call centers, filed a complaint in the United States District Court for the Eastern

9   District of Missouri alleging that he and other similarly situated employees of GC Services and GC

10  Services Corp. were required to work "off the clock" without compensation and were not paid time-

11  and-a-half for overtime hours worked. The *Easley* complaint alleged causes of actions under the

12  Federal Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201-262, as well as under Missouri's

13  wage and hour laws. (Def. Motion, Ex. C, ¶¶ 31-52.)

14          B.      The *Meyers* action

15          On November 13, 2009, the *Meyers* Plaintiffs filed an action in the United States District Court

16  for the Southern District of West Virginia similarly alleging that they were required to perform "off

17  the clock" work without compensation and were not paid appropriate overtime wages. The *Meyers*

18  complaint alleged only a cause of action pursuant to the FLSA. (Id., Ex. D, ¶¶ 44-53.) While the case

19  at first appeared to include only employees in West Virginia, it was later amended–in cooperation with

20  the *Easley* attorneys–to seek a nationwide collective action involving the exact class of employees

21  making the same claims as in the *Easley* lawsuit. (See id., Ex. E.) The *Meyers* lawsuit also included

22  opt-in Plaintiffs from California. (See id., Ex. E, ¶ 18; id., Ex. F.)

23          Just like in the present case, defendant GC Services in the *Meyers* lawsuit moved to dismiss

24  or, in the alternative, to transfer or stay the action in the Southern District of West Virginia in favor

25  of the action then-pending in the Eastern District of Missouri. On March 18, 2010, the district court

26  granted defendant's motion, finding that the first-to-file rule should apply, and transferred the action

27  to the Eastern District of Missouri. (Id., Ex. B.)

28  ///

1

        C.      The *Beasely* action

2           Thereafter, plaintiffs in the *Easley* and *Meyers* actions moved to have them consolidated in the

3   Eastern District of Missouri, and on April 26, 2010, the combined plaintiffs filed an Amended

4   Consolidated Complaint (hereinafter, the "*Beasely* action"). (Id., Ex. A.) The *Beasely* complaint

5   alleged a single claim for violation of the FLSA, (id., Ex. A, ¶¶ 21-29), and specifically excluded GC

6   Services' California employees from the putative plaintiff class, (id., Ex. A, ¶ 19). Plaintiffs also filed

7   the opt-in consent forms for all those who previously opted into the *Meyers* case, except for the two

8   California employees. (See id., Ex. H.)

9

        D.      The *Gardner* action

10          Finally, on March 24, 2010, Gardner–represented by the same attorneys as the plaintiffs in the

11  *Beasely* lawsuit–filed the present action in the Superior Court for the County of San Diego, alleging

12  five cause of action: (1) failure to pay straight-time wages in violation of California state law; (2)

13  failure to pay overtime wages in violation of California state law; (3) failure to pay all compensation

14  due and owing at termination in violation of California state law; (4) violation of the California

15  Business and Professions Code § 17200 et seq.; and (5) quantum meruit. (Id., Ex. I.) On May 10,

16  2010, GC Services removed the action to this Court. [Doc. No. 1].

17  **II.    Procedural history**

18          After the *Gardner* action was removed to this Court, Defendant moved to dismiss the action

19  for lack of jurisdiction or, in the alternative, to transfer it to the Eastern District of Missouri or stay

20  it pending the resolution of the *Beasely* lawsuit. [Doc. No. 2]. Plaintiff filed an opposition, and

21  Defendant replied. [Doc. Nos. 6, 9]. At the same time, Plaintiff also filed a motion to remand this

22  action to state court. [Doc. No. 4]. Defendant filed an opposition, and Plaintiff replied. [Doc. Nos. 7,

23  8]. The Court heard oral argument on both motions on July 6, 2010.

24                              **DISCUSSION**

25  **I.     Plaintiff's motion to remand**

26          Plaintiff's motion to remand alleges Defendant failed to meet its burden of showing that the

27  jurisdictional amount is met in this case. When a case is removed from state court, the removing

28  defendant bears the burden of establishing federal jurisdiction, including any applicable amount in

controversy. Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 683 (9th Cir. 2006) (per curiam). "Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met." Id. (citing Gaus v. Miles, Inc., 980 F.2d 564, 566-67 (9th Cir. 1992)). Thus, the defendant must provide evidence that it is "more likely than not" that the amount in controversy satisfies the jurisdictional requirement. Sanchez v. Monumental Life Ins. Co., 102 F.2d 398, 404 (9th Cir. 1996). This burden is unchanged where, as in this case, the removal is based on the Class Action Fairness Act of 2005 ("CAFA"). See Abrego, 443 F.3d at 685-86.

As the Ninth Circuit has explained, CAFA "vests the district court with 'original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which' the parties satisfy, among other requirements, minimal diversity." Id. at 680 (quoting 28 U.S.C. § 1332(d)). In the present case, Plaintiff argues the remand is appropriate because Defendant has failed to meet its burden of establishing by preponderance of the evidence that the amount in controversy exceeds $5,000,000.

Contrary to Plaintiff's contentions, however, there is no obligation on Defendant to submit any declarations or "summary-judgment-type evidence" in support of its assertion that the jurisdictional amount is met in the present case. Rather, the Ninth Circuit has explained that:

> "The district court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy. If not, the court may consider facts in the removal petition, and *may* 'require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'"

Abrego, 443 F.3d at 690 (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997)) (emphasis added). Accordingly, Defendant can meet its burden as long as the jurisdictional amount is either "facially apparent" from the complaint or is shown to be "more likely than not" by the facts alleged in the removal petition. See id.; see also Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004) (noting that the Ninth Circuit has "endorsed the Fifth Circuit's practice of considering facts presented in the removal petition as well as any summary-judgement-type evidence relevant to the amount in controversy at the time of removal" (citation and internal quotation marks omitted)); Bosinger v. Phillips Plastics Corp., 57 F. Supp. 2d 986, 989 (S.D. Cal. 1999) (noting that where the complaint does not specify an amount of damages, "the underlying facts supporting removal

must be stated in the removal notice itself").

In this case, Defendant's Notice of Removal adequately alleges the underlying facts to show it is "more likely than not" that the amount "in controversy" exceeds $5,000,000. See Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." (citations omitted)). First, Defendant points to Plaintiff's claim for violation of California Labor Code § 510, which requires the payment of overtime premium for hours worked in excess of eight in a given workday. (Notice of Removal, at 3.) Defendant notes that it currently employs 303 full-time employees who meet the proposed class definition. (Id. at 3; see also Jackson Decl., ¶ 4.) According to Defendant, if those employees, earning on average $14.50 per hour, worked 30 minutes of overtime per day over four years, the unpaid overtime owed on the overtime claim would exceed $3,000,000.[1] (Notice of Removal, at 3.) Second, Defendant points to Plaintiff's claim for failure to timely pay termination wages under California Labor Code § 203, for which the penalty is 30 days of wages. (Id.) Defendant notes that it has employed approximately 1,385 account representatives and employees in equivalent positions since April 2006. who had their employment with GC Services terminated. (Id.; see also Jackson Decl., ¶ 5.) According to Defendant, the potential recovery by those employees would be approximately $4,800,000.[2] (Notice of Removal, at 3.) Together, the recovery on just these two claims would be approximately $7,800,000. Accordingly, Defendant provided sufficient underlying facts to demonstrate that the combined amount "in controversy" exceeds $5,000,000. See Rippee v. Boston Market Corp., 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (concluding that "an estimate of the amount of unpaid overtime in *controversy* can be calculated using information from Defendant's own records").[3]

---

[1] 0.5 hours * 1.5 * $14.50 (hourly rate) * 235 per year * 4 years * 303 full-time employees = $3,097,417.50.

[2] $14.50 (hourly rate) * 8 hours per day * 30 days * 1,385 separated employees = $4,819,800.

[3] Contrary to Plaintiff's arguments, Defendant's allegations in the Notice of Removal are more than "magical incantations," see Abrego, 443 F.3d at 689, "mere averment[s]," see Gaus, 980 F.2d at 567, or "conclusory allegations," see Singer, 116 F.3d at 377, that the Ninth Circuit held are insufficient to meet the defendant's burden of showing that the amount in controversy "more likely than not" exceeds the jurisdictional requirement. Moreover, precise certainty is not required for

1    For the foregoing reasons, because the underlying facts alleged in the Notice of Removal

2    demonstrate that it is "more likely that not" the amount in controversy exceeds $5,000,000 as required

3    by CAFA, see 28 U.S.C. § 1332(d)(2), the Court **DENIES** Plaintiff's motion to remand.

4    **II.      Defendant's motion to dismiss, transfer, or stay**

5    Defendant argues that in light of the duplicative nature of the claims and of the putative classes

6    in the *Gardner* and *Beasely* actions, dismissal of the later-filed *Gardner* lawsuit is warranted under

7    the first-to-file rule. The "first to file" rule is a "generally recognized doctrine of federal comity" that

8    allows a district court to decline jurisdiction over an action "when a complaint involving the same

9    parties and issues has already been filed in another district." Pacesetter Sys., Inc. v. Medtronic, Inc.,

10   678 F.2d 93, 94-95 (9th Cir. 1982) (citations omitted). Pursuant to the rule, "when two identical

11   actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should

12   try the lawsuit and no purpose would be served by proceeding with a second action." Id. However,

13   this rule is "not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with

14   a view to the dictates of sound judicial administration." Id.

15   In applying the "first to file" rule, the court looks to three threshold factors: (1) the chronology

16   of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. See Alltrade,

17   Inc. v. Uniweld Products, Inc., 946 F.2d 622, 625 (9th Cir. 1991). If the case meets the requirements

18   of the "first to file" rule, the court has the discretion to transfer, stay, or dismiss the action. See id. at

19   628-29. However, even where the rule would otherwise apply, the court also has the discretion to

20   "dispense" with its application "for reasons of equity." Id. at 628.

21   A.      Chronology of the two actions

22   In this case, the first factor is clearly satisfied because the *Gardner* action was filed after both

23   the *Easley* and *Meyers* complaints were filed, and after they were consolidated in the Eastern District

24   of Missouri in the form of the *Beasely* action.

25   B.      Similarity of the parties

26   Defendant, however, failed to establish there is a similarity of the parties such that would

27   _____

28   Defendant to meet its burden. See Korn, 536 F. Supp. 2d at 1204-05 ("[A] removing defendant is *not*
     obligated to 'research, state, and prove the plaintiff's claims for damages.'" (quoting McCraw v.
     Lyons, 863 F. Supp. 430, 434 (W.D. Ky. 1994)).

1   warrant the application of the "first to file" rule. For the rule to apply, the actions need not be

2   identical. Byerson v. Equifax Info. Servs., LLC, 467 F. Supp. 2d 627, 635-36 (E.D. Va. 2006);

3   Inherent.com v. Martindale-Hubbell, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006). Thus, the rule only

4   requires the parties be "substantially similar." Inherent.com, 420 F. Supp. 2d at 1097; accord Byerson,

5   467 F. Supp. 2d at 635-36 (requiring a "substantial overlap" with respect to the parties). Moreover,

6   in the context of a class action, "the classes, and not the class representatives, are compared." Adoma

7   v. Univ. of Phoenix, Inc., — F. Supp. 2d —, 2010 WL 1797263, at *5 (E.D. Cal. 2010) (citing Ross

8   v. U.S. Nat'l Ass'n, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008)).

9        In the present case, as Plaintiff correctly notes, the *only* identical party between the two actions

10   is Defendant GC Services. As for the putative classes, there is no overlap at all, much less "substantial

11   overlap." See Byerson, 467 F. Supp. 2d at 635-36. Plaintiff's complaint here seeks to represent a

12   putative class of employees who worked in Defendant's two call centers *in California*. (Def. Motion,

13   Ex. I, ¶ 17.) The *Beasely* action in the Eastern District of Missouri, on the other hand, specifically

14   *excludes* all California employees from the putative class. (Id., Ex. A, ¶ 7.)

15        Defendant's arguments to the contrary are not persuasive. Although Defendant argues the

16   actions were brought by the same attorneys against the same defendant, it fails to cite any case law

17   as to why this would be relevant in this context. Similarly, the fact that the actions *before amendment*

18   might have involved a "substantial overlap" between the parties is not dispositive. See, e.g., Ross, 542

19   F. Supp. at 1020 (denying defendant's motion to dismiss despite the fact that both actions were

20   "brought against the same defendant by the same counsel, and both *initially alleged* putative classes

21   of U.S. Bank employees in California, Oregon, and Washington" (emphasis added)). Rather, the focus

22   is on the composition of the two classes at this point. See, e.g., Walker v. Progressive Cas. Ins. Co.,

23   No. C03-656R, 2003 WL 21056704, at *2 (W.D. Wash. May 9, 2003) ("Whatever plaintiffs' stated

24   intentions, the fact remains that they are currently parties in the *Camp* action, and it is this fact, not

25   plaintiffs' future plans, that the court finds controlling."). Accordingly, in this case, the second factor

26   of the "first to file" rule is not met because there is no longer any substantial similarity of parties

27   between the two actions. See Inherent.com, 420 F. Supp. 2d at 1097.

28   ///

C.      Similarity of the issues

Defendant also failed to establish there is a similarity of the issues between these two actions. As with the parties, the issues in the two actions need not be identical, as long as they are "substantially similar." Adoma, 2010 WL 1797263, at *5; Inherent.com, 420 F. Supp. at 1097.

Defendant argues the issues in the *Gardner* and *Beasely* actions are substantially similar because "[b]oth lawsuits allege that GC Service's call center employees performed various tasks off-the-clock, such as logging into computer applications before and after their scheduled shift and working during meal breaks." (Def. Motion, at 7 (internal citations omitted).) However, this is a false similarity. As Plaintiff correctly notes, while the *Beasely* complaint alleges only a violation of the FLSA, (see Def. Motion, Ex. A, ¶¶ 21-29), the complaint in this case only alleges five causes of action under California state law, (see id., Ex. I, ¶¶ 27-52). This distinction results in significant differences between the claims asserted and remedies requested in the two actions.

First, while the *Beasely* action only seeks relief for Defendant's failure to pay overtime wages, (see Def. Motion, Ex. A, ¶¶ 11-12), the present action also seeks relief for Defendant's failure to pay straight-time wages (Count I), Defendant's failure to pay compensation due and owing at termination (Count III), and Defendant's violation of California Business and Professions Code § 17200 et seq. (Count IV), (see id., Ex. I, ¶¶ 27-30, 37-52).

Second, the certification process is different for the two actions. Under Rule 23 of Federal Rules of Civil Procedure, once the Court conditionally certifies a class, all the prospective class members are a part of the class unless they affirmatively *opt-out* of the action. See FED. R. CIV. P. 23(c)(2), (c)(3). On the other hand,  collective actions brought under the FLSA require that individual members *opt in* by filing a written consent. See 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

Finally, the remedies available in two actions are different. By way of example only, while the FLSA mandates overtime to be calculated on a weekly basis at one and one-half of the regular pay rate, California law mandates overtime to be paid for more than eight hours worked in any workday or for any time worked on the seventh day in a workweek, and provides for double rate whenever an

1  employee works more than twelve hours in one workday or more than eight hours on the seventh day.

2  Compare 29 U.S.C. § 207(a)(1) with CAL. LABOR CODE § 510(a).

3        The cases cited by Defendant do not mandate a different conclusion. Thus, in Jumapao v.

4  Washington Mutual Bank, F.A., No. 06-CV-2285 W (RBB), 2007 WL 4258636 (S.D. Cal. Nov. 30,

5  2007), the court granted the motion to transfer where both actions alleged claims under the FLSA *and*

6  California state law, and where the first action involved 249 individuals from California. Similarly,

7  in Walker, 2003 WL 21056704, the court granted a motion to dismiss based on prior action where the

8  two named plaintiffs in the second action were also parties to the first action, there were 39 other class

9  members from the first action that qualified as members of the plaintiffs' proposed class in the second

10  action, and the FLSA and the Washington Minimum Wage Act contained "materially identical

11  definitions of the administrative capacity exemption." Finally, in Adoma, 2010 WL 1797263, the court

12  found the "first to file" rule to apply where the proposed classes in both actions sought to represent

13  at least some of the same individuals and both actions raised FLSA claims, although the second action

14  also alleged an additional unpaid overtime theory.

15        Accordingly, in this case, because the claims alleged in the two actions are not "substantially

16  similar," the third factor also weighs against the application of the "first to file" rule.

17        D.    Exception

18        Even if the factors somehow favored the application of the "first to file" rule, the Court could

19  still exercise its discretion to "disregard it in the interests of equity." Adoma, 2010 WL 1797263, at

20  *6. The Ninth Circuit has explained that the application of the "first to file" should not be

21  "mechanical." See Alltrade, 946 F.2d at 627-28. According to the court, "district court judges can, in

22  the exercise of their discretion, dispense with the first-filed principle for reasons of equity." Id. at 628.

23  Thus, in Adoma, although the district court found all three factors to be satisfied, the court exercised

24  its discretion not to apply the rule where the second action involved additional claims and different

25  relief under California law. 2010 WL 1797263, at **6-7. According to the court:

26          Further, plaintiff brings additional theories of recovery. Moreover, the fact that
        plaintiff also seeks relief under California state law, which requires entirely different

27          calculations for overtime compensation, demonstrates that judicial resources will not
        be significantly conserved. California courts will, if plaintiff is successful, notice a

28          class action concerning overtime pay, and these class members will be required to
        participate in two separate claims for overtime compensation.

Id. at *7. The same is true here. Even if all of the "first to file" factors weighed in favor of its application (which they do not), in light of the distinct California state claims raised and relief requested in the *Gardner* action, the application of the "first to file" rule would not result in any significant conservation of judicial resources.

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss or, in the alternative, transfer or stay the present action based on the "first to file" rule.

CONCLUSION

Accordingly, the Court **DENIES** Plaintiff's motion to remand and **DENIES** Defendant's motion to dismiss, transfer, or stay.

**IT IS SO ORDERED.**

DATED:  July 6, 2010

IRMA E. GONZALEZ, Chief Judge
United States District Court