# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROOKE GARDNER, individually, and on behalf of a class of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GC SERVICES, LP,<br><br>Defendant. | CASE NO. 10cv0997 - IEG (CAB)<br><br>**ORDER:**<br><br>**(1) PRELIMINARILY CERTIFYING CLASSES FOR SETTLEMENT PURPOSES;**<br><br>**(2) APPOINTING CLASS REPRESENTATIVE;**<br><br>**(3) PRELIMINARILY APPROVING SETTLEMENT;**<br><br>**(4) APPOINTING CLASS COUNSEL;**<br><br>**(5) APPROVING CLASS NOTICE;**<br><br>**(6) SETTING A FINAL APPROVAL HEARING FOR MARCH 26, 2012**<br><br>[Doc. No. 54] |

Presently before the Court is Plaintiff Brooke Gardner ("Plaintiff")'s unopposed motion for preliminary approval of a class settlement. [Doc. No. 54.] For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion.

## BACKGROUND

**I.      Facts**

This is a wage and hour class action case. Defendant GC Services, LP ("GC Services") provides telephone-based customer services and collections services to various companies

throughout the United States. [Doc. No. 15, Answer ¶ 1.] GC Services operates three call centers in California, including one in San Diego. [Id.] GC Services' telephone workers are generally referred to as account representatives, although their job titles vary. [Doc. No. 26-3, Deposition of Sharon Webb ("Webb Depo.") Exs. 5-9.] GC Services pays its account representatives by the hour and classifies them as "non-exempt" employees who are entitled to overtime compensation. [Id.; Doc. No. 1, Compl. ¶ 8.] The account representatives are typically scheduled to work at least 40 hours per week. [Doc. No. 26-2, Declaration of Brooke Gardner ("Gardner Decl.") ¶ 2.]

Named Plaintiff Brooke Gardner previously worked as an account representative at GC Services' call center in San Diego. [Id.] Plaintiff alleges that account representatives were required to perform certain "pre-shift" work on a daily basis (logging into the computer system, various software programs, and the telephone system); that the account representatives were uncompensated for the "pre-shift" work; and that if they failed to complete it, they were subject to discipline. [Compl. ¶¶ 10-11, 15-16.] Plaintiff also alleges that account representatives were required to work off the clock during meal periods and during "post-shift" periods. [Id. ¶¶ 13-16.]

## II.  Procedural History

On March 24, 2010, Plaintiff filed a putative class action against GC Services in state superior court alleging causes of action for (1) failure to pay straight-time wages in violation of California Labor Code § 218; (2) failure to pay overtime wages in violation of 8 C.C.R. § 11040 and California Labor Code §§ 510 and 1198; (3) failure to pay compensation due at termination in violation of California Labor Code §§ 201-03; (4) violation of California Business and Professions Code §§ 17200, *et seq.*; and (5) *quantum meruit*. [Doc. No. 1, Compl.] On May 10, 2010, GC Services removed the action to this Court pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). [Doc. No. 1, Notice of Removal.]

Because of a related action in the Eastern District of Missouri, GC Services filed a motion to dismiss, transfer, or stay the case pending resolution of the related action. [Doc. No. 2.] Shortly thereafter, Plaintiff filed a motion to remand the action back to state court. [Doc. No. 4.] On July 6, 2010, the Court denied GC Services' motion to dismiss and also denied Plaintiff's motion to

remand to state court. Thereafter, GC Services filed an answer. [Doc. No. 15.] On December 3, 2010, Plaintiff filed a motion for class certification. [Doc. No. 26.] GC Services opposed the motion. [Doc. No. 32.]

After significant discovery, on February 1, 2011 and February 2, 2011, the parties engaged in a mediation session with experienced mediator Joan S. Morrow. [Doc. No. 54-2, Declaration of Jason M. Lindner ("Lindner Decl.") ¶ 2.] Although the parties did not reach an agreement at the mediation, the parties continued to have settlement discussions and conducted data analysis that eventually resulted in an agreement to settle the action on May 19, 2011. [Id. ¶ 3.] The Court dismissed Plaintiff's motion for class certification without prejudice after the parties notified the Court that the case had settled. [Doc. Nos. 49, 51.] The parties drafted a Joint Stipulation of Settlement, [Doc. No. 54-2, Linder Decl. Ex. A ("Class Settlement")], and now submit that agreement to this Court for preliminary approval. [Doc. No. 54.]

### III.  The Settlement

Pursuant to the proposed settlement, CG Services has agreed to pay $975,000 as the total settlement fund, without admitting liability, and to deposit the funds with a settlement administrator following final approval. [Class Settlement §§ 2.22, 6.2.1, 7.4.1.] The settlement fund equals the entire amount to be paid to the class, including attorneys' fees (not to exceed $292,000–30% of the total settlement fund), expert fees, costs (not to exceed $20,000), and an incentive award to the named Plaintiff Brooke Gardner (not to exceed $3,000), but excluding employment taxes. [Id. § 2.22, 6.3, 6.4.]

The class consists of all current and former "non-exempt" (i.e., overtime eligible) telephone-dedicated call center representatives who work or worked for GC Services at locations in California at any time between March 24, 2006 and June 15, 2011. [Id. § 2.5.] The parties estimate that the size of the putative class is approximately 1,524 individuals. [Id.]

Class members who want to opt-out have the obligation to notify the settlement administrator within 45 days after the initial mailing of the class notice. [Class Settlement § 7.2.7.] Every class member that does not opt-out from this settlement and submits a claim form

within sixty days will receive a cash payment from the settlement fund. [Id. § 7.4.2.] The amount of payment received will be calculated by determining the pro rata share of the funds based on each class member's amount of weeks worked within the relevant time period, but the amount for each class member will be no less than $50. [Id. § 6.7.2.] In addition, the settlement agreement provides that if the amount claimed does not equal at least 50% of the settlement pool, the payments to qualified class members will be reapportioned so that at least 50% of the settlement pool is paid to the class members. [Id. § 6.7.2(d).] Unclaimed funds above the 50% minimum will revert back to GC Services. [Id.]

In exchange, GC Services will receive a release from the class members of all wage and hour claims asserted in this action along with any wage and hour claims that could have been asserted. [Id. §§ 2.28, 6.8.1-6.8.4.] This release extends only to class members who do not opt-out of the class. [Id. §§ 2.32, 6.8.1-6.8.4.]

## DISCUSSION

When the parties reach a settlement agreement prior to class certification, the court is under an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). Thus, the court must first assess whether a class exists, and second, determine whether the proposed settlement is "'fundamentally fair, adequate, and reasonable.'" Id. (citations omitted). Accordingly, in the present case, the Court will first examine the propriety of class certification, followed by the fairness of the settlement agreement, and will then address the questions of class counsel and class notice.

**I.     Class Certification**

A plaintiff seeking a Rule 23(b)(3) class certification must first satisfy the prerequisites of Rule 23(a). Once subsection (a) is satisfied, the purported class must then fulfill the requirements of Rule 23(b)(3). In the present case, Plaintiff seeks to certify the following class:

> [A]ll current and former non-exempt (i.e., overtime eligible) telephone-dedicated representatives who work or worked for Defendant, its parents, subsidiaries, affiliates, predecessors or assigns at locations in California at any time between

March 24, 2006 and June 15, 2011 ("Class Period"), estimated at approximately 1524 but to include up to 1600 individuals.

[Class Settlement § 2.5.]

A.  Rule 23(a) requirements

Rule 23(a) establishes four prerequisites for class action litigation: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. FED. R. CIV. P. 23(a); see also Staton, 327 F.3d at 953. The Court will examine each of these requirements in turn.

*1.  Numerosity*

The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). In the present case, the parties estimate that there are approximately 1,524 members of the proposed class. [Class Settlement § 2.5.] They are far too numerous to be joined as plaintiffs in this lawsuit. Accordingly, the numerosity requirement is met in this case.

*2.  Commonality*

The commonality requirement is met if "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The commonality requirement is construed "permissively." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). All questions of fact and law need not be common, but rather "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id. In the present case, there are many questions of fact and law that are common to class; specifically, whether GC Services' alleged policy of requiring account representative to perform pre-shift, post-shift, and meal-period work without compensation violated California labor laws. [See Compl. ¶¶ 21, 27-52.] Accordingly, the commonality requirement is met.

*3.  Typicality*

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The representative claims are "typical" if they are "reasonably co-extensive with those of absent class members," though they "need not be substantially identical." Hanlon, 150 F.3d at 1020. Typicality requires that the

named plaintiffs of the class "'possess the same interest and suffer the same injury' as the class members." Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 156 (1982). In the present case, both the named plaintiff and the purported class members worked for GC Services as account representatives and were injured by GC Services' allegedly improper wage and hour practices. [Compl. ¶¶ 10-16; Doc. No. 26-2, Gardner Decl. ¶¶ 2-7.] Accordingly, because Plaintiff's claims are reasonably co-extensive with the claims of the absent class members, the typicality requirement is met in this case.

### 4. Adequacy of representation

Finally, Rule 23(a) also requires that the class representative be able to "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Representation is adequate if the plaintiff: (1) "do[es] not have conflicts of interest with the proposed class" and (2) is "represented by qualified and competent counsel." Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1185 (9th Cir. 2007). At the heart of this requirement is the "concern over settlement allocation decisions." Hanlon, 150 F.3d at 1020.

In the present case, there appears to be no conflict of interest between Plaintiff and the proposed class, and Plaintiff's counsel is qualified and competent. First, Plaintiff has pursued the interests of the class by engaging in investigation and discovery, attending a deposition, and assisting counsel with other aspects of the case. [Doc. No. 54-2, Lindner Decl. ¶ 5.] Moreover, the $3,000 enhancement award to Plaintiff appears to be reasonable in light of her efforts in this litigation. Second, Plaintiff's counsel has extensive experience acting as class counsel in complex class actions cases including wage and hour class actions. [See Doc. No. 26-3, Declaration of Eric Lindner ("Lindner Decl.") Ex. J; Doc. No. 26-5, Declaration of Mark Potashnick ("Potashnick Decl.") ¶¶ 4-8, Ex. A; Doc. No. 57, Declaration of J. Farrest Taylor ("Taylor Decl.") ¶¶ 2-4, Exs. A-B; Doc. No. 58, Declaration of G. Patrick Jacobs ("Jacobs Decl.") ¶¶ 1-11.] Accordingly, the adequacy of representation requirement is met in this case, and Plaintiff Brooke Gardner is appointed as class representative.

For the foregoing reasons, Plaintiff has satisfied the prerequisites of Rule 23(a).

B. Rule 23(b)(3) requirements

In the present case, Plaintiff proposes certification pursuant to Rule 23(b)(3). [Doc. No. 54-1 at 11-13.] Federal Rule of Civil Procedure 23(b)(3) requires the court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." These requirements are called the "predominance" and "superiority" requirements. See Hanlon, 150 F.3d at 1022-23.

*1. Predominance*

The predominance inquiry tests "'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" Hanlon, 150 F.3d at 1022 (quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997)). This analysis requires more than proof of common issues of law or fact. Id. Rather, the common questions should "'present a significant aspect of the case and . . . be resolved for all members of the class in a single adjudication.'" Id. (citation omitted).

"When the claim is that an employer's policy and practices violated labor law, the key question for class certification is whether there is a consistent employer practice that could be a basis for consistent liability." Kamar v. Radio Shack Corp., 254 F.R.D. 387, 399 (C.D. Cal. 2008). Class certification is usually appropriate where "liability turns on an employer's uniform policy that is uniformly implemented, since in that situation predominance is easily established." Id. In similar cases, common claims were found to predominate where a company-wide policy governed how employees spent their time and/or how they were paid. See, e.g., Wright v. Linkus Enterprises, Inc., 259 F.R.D. 468, 473 (E.D. Cal. 2009) (finding predominance, despite minor factual difference between individual class members, where the case involved "alleged policies that required class members to work without compensation, meal and rest periods, and/or reimbursement for expenses"); In re Wells Fargo Home Mortg. Overtime Pay Litig., 527 F. Supp. 2d 1053, 1065-68 (N.D. Cal. 2007) (finding predominance where, as a general matter, the

defendant's policy and practice regarding compensation and exemption was uniform for all putative class members).

In the present case, the claims stem from GC Services' alleged uniform policy of requiring account representative to perform certain pre-shift, post-shift, and lunch time tasks without compensation. [Compl. ¶¶ 9-16.] Therefore, common factual and legal issues predominate the action. See Wright, 259 F.R.D. at 473; Wells Fargo, 527 F. Supp. 2d at 1065-68.

### 2. *Superiority*

The superiority inquiry requires determination of "whether objectives of the particular class action procedure will be achieved in the particular case." Hanlon, 150 F.3d at 1023 (citation omitted). Notably, the class-action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted). Here, there is no evidence that class members would have an interest in individual control of their cases. To the contrary, class action litigation in employment cases relax any concerns that current employees might have about retaliation from their employers if they were to bring suit individually. See Bibo v. Fed. Express, Inc., 2009 U.S. Dist. LEXIS 37597, at *26 (N.D. Cal. Apr. 21, 2009). In addition, classwide treatment of the issues will be efficient in this case because the class members' individual claims appear to be relatively small. Accordingly, a class action constitutes a superior method of adjudication.

For the foregoing reasons, Plaintiff has satisfied the requirements of Rule 23(b)(3). Accordingly, the Court **GRANTS** preliminary certification of the proposed class for the purposes of the proposed settlement. The Court, however, may review this finding at the final approval hearing.

## II. The Settlement

Rule 23(e) requires the court to determine whether a proposed settlement is "'fundamentally fair, adequate, and reasonable.'" Staton, 327 F.3d at 959 (quoting Hanlon, 150 F.3d at 1026). To make this determination, the court must consider a number of factors, including:

(1) the strength of plaintiff's case; (2) "'the risk, expense, complexity, and likely duration of further litigation;'" (3) "the risk of maintaining class action status throughout the trial;" (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. See id. (citations omitted). In addition, the settlement may not be the product of collusion among the negotiating parties. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

Given that some of these factors cannot be fully assessed until the Court conducts the final approval hearing, "'a full fairness analysis is unnecessary at this stage.'" See Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation omitted). Rather, at the preliminary approval stage, the Court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible judicial approval" and thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate. See 4 WILLIAM B. RUBENSTEIN ET AL., NEWBERG ON CLASS ACTIONS § 11:25 (4th ed. 2002) (citations omitted); see also Wright, 259 F.R.D. at 472 (citation omitted); Alberto, 252 F.R.D. at 666 (citation omitted).

After reviewing the settlement for overall fairness according to the above factors from Hanlon, the Court finds that preliminary approval is appropriate. Plaintiff may have a meritorious case, but GC Services has represented that it will vigorously contest Plaintiff's claims. [Doc. No. 54 at 8.] The disputed factual and legal issues would be complex and costly to resolve at trial. In addition, Plaintiff notes that settlement of the case at this time would be beneficial because a case pending before the California Supreme Court has the potential to change the analysis of the class's meal and rest break claims. [Id.] See Brinker Restaurant Corp. v. Sup. Ct, 85 Cal. Rptr. 3d 688 (Cal. 2008). Therefore, it is reasonable to resolve the litigation through a class settlement at this early stage.

The proposed settlement is the result of six months of negotiation between counsel for the parties, who both have experience in employment class action litigation. [Doc. No. 54 at 7-8;

Class Settlement §§ 3.3-3.5.] The parties have conducted significant discovery and analysis of data, including reviewing and analyzing the time entry data for the class members in order to estimate a fair and reasonable recovery for them. [Doc. No. 54-2, Lindner Decl. ¶¶ 2-3.] In addition, there is no evidence that the settlement, the award of attorneys' fees or the enhancement award for Plaintiff was the result of collusion between the parties.

Finally, the plan for distributing the settlement appears sufficiently fair for conditional approval, although a further showing will be needed for final approval. The amount of payment received by each class member will be calculated by determining the pro rata share of the funds based on each class member's amount of weeks worked within the relevant time period, but the amount for each class member will be no less than $50. [Id. § 6.7.2.] Further, at this stage, the request of 30% of the total settlement fund for attorneys' fees appears to be reasonable as it is within the range of acceptable attorney's fees in Ninth Circuit cases. See Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark"). Also, the $3,000 enhancement award–which represents approximately 0.3% of the total settlement fund–to Plaintiff appears to be reasonable in light of her efforts and involvement in this litigation. [See Doc. No. 54-2, Lindner Decl. ¶ 5.] See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 457, 463 (9th Cir. 2000) (approving incentive award of $5,000 to two plaintiff representatives of 5,400 potential class members in $1.75 million settlement, where incentive payment constituted only 0.57% of the settlement fund).

For the foregoing reasons, the Court **GRANTS** preliminary approval of the proposed class settlement. The Court, however, reserves judgment on the reasonableness of the attorneys' fees for the final approval hearing.

### III. Appointing Class Counsel

Traditionally, the choice of counsel has been left to the parties, "whether they sue in their individual capacities or as class representatives." In re Cavanaugh, 306 F.3d 726, 734 (9th Cir. 2002) (citation omitted). In determining whether Plaintiff's counsel is adequate, a court must

consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A). In the present case, as already noted, Plaintiff's counsel has extensive experience in employment class actions. [See Doc. No. 26-3, Lindner Decl. Ex. J; Doc. No. 26-5, Potashnick Decl. ¶¶ 4-8, Ex. A; Doc. No. 57, Taylor Decl. ¶¶ 2-4, Exs. A-B; Doc. No. 58, Jacobs Decl. ¶¶ 1-11.] Accordingly, because Plaintiff's counsel appears to be competent to represent the class, the Court **GRANTS** Plaintiff's motion to appoint the law firms Stueve Siegel Hanson LLP; Weinhaus & Potashnick; Cochran, Cherry, Givens, Smith, Lane and Taylor; and Jacobs Law Office as class counsel.

## IV. Approving Class Notice

The class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." See Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). In addition, the class notice must satisfy the content requirements of Federal Rule of Civil Procedure 23(c)(2)(B), which provides that the notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

### A. Content of the notice

In the present case, the content of the proposed notice is adequate. It provides: (1) a description of the lawsuit; (2) a description of the settlement class and the class claims; (3) a statement that class members may appear through an attorney; (4) a statement that class members have the ability to be excluded from the settlement and instructions on how to request exclusion; and (5) a description of the effect on class members if the Court approves the class settlement. [See generally Class Settlement Ex. A.]

B.     Method of Notice

The proposed method of notice is reasonable.  All potential class members will be mailed notice of the settlement, using information from GC Services' records within 14 business days of this Order. [Class Settlement § 7.2.1.]  In addition, the claims administrator will check with the U.S. Postal Service National Change of Address Database and update any addresses with any new information found regarding the location of class members.  [Id. §§ 7.2.1-7.2.3.]  Moreover, the claims administrator will run a skip-trace for class members listed as former employees in GC Services' records who have not, after 30 days, returned a claim form or otherwise contacted the claims administrator.  [Id. § 7.2.4.]  Class members have 45 calendar days after the mailing of the notices to file objection or to opt out of the settlement.  [Id. §§ 7.2.7, 7.2.9.]  Class members have 60 calendar days after the mailing of the notices to submit completed claim forms.  [Id. § 7.2.6.]

After review of the proposed notice and settlement agreement, the Court finds that the notice is adequate and sufficient to inform the class members of their rights.  Accordingly, the Court approves the form and manner of giving notice of the proposed settlement.

## V.     **Setting Final Approval Hearing**

Finally, the Court sets the Final Approval Hearing for **Monday, March 26, 2012** at **10:30 a.m.**  Plaintiff shall file a motion for final approval of the settlement, as well as any motions for fees awards and enhancement awards, on or before **Monday, February 27, 2012.**

## **CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED THAT**:

(1)     Plaintiff's request for preliminary certification of the class for purposes of the proposed settlement is **GRANTED**;

(2)     Plaintiff's request to have Plaintiff Brooke Gardner appointed as class representative is **GRANTED**;

(3)     Plaintiff's request for preliminary approval of the proposed settlement is **GRANTED**;

(4) Plaintiff's request to have the law firms of Stueve Siegel Hanson LLP; Weinhaus & Potashnick; Cochran, Cherry, Givens, Smith, Lane and Taylor; and Jacobs Law Office appointed class counsel is **GRANTED**;

(5) The form and manner of giving notice of the proposed settlement to the class members is **APPROVED**; and

(6) The Final Approval Hearing on the proposed settlement shall be held on **Monday, March 26, 2012** at **10:30 a.m.** Plaintiff shall file a motion for final approval of the settlement, as well as any motions for fees awards and enhancement awards, on or before **Monday, February 27, 2012.**

**IT IS SO ORDERED.**

**DATED:** November 1, 2011

*Irma E. Gonzalez* (signature)

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**