# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROOKE GARDNER, individually, and on behalf of a class of others similarly situated, | CASE NO. 10cv0997 - IEG (CAB) |
| Plaintiff, | **ORDER:** |
| | **(1) CERTIFYING CLASS;** |
| vs. | **(2) GRANTING FINAL APPROVAL OF CLASS SETTLEMENT; AND** |
| | [Doc. No. 62] |
| GC SERVICES, LP, | **(3) GRANTING MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD** |
| Defendant. | [Doc. No. 63] |

Presently before the Court is Plaintiff Brooke Gardner ("Plaintiff")'s unopposed motion for final approval of class settlement and Plaintiff's motion for attorneys' fees, costs, and service award.  [Doc. Nos. 62-63.]  For the reasons set forth below, the Court **GRANTS** both motions.

## BACKGROUND

### I.      Facts

This is a wage and hour class action case.  Defendant GC Services, LP ("GC Services") provides telephone-based customer services and collections services to various companies throughout the United States.  [Doc. No. 15, Answer ¶ 1.]  GC Services operates three call centers in California, including one in San Diego.  [Id.]  GC Services' telephone workers are generally referred to as account representatives, although their job titles vary.  [Doc. No. 26-3, Deposition of

Sharon Webb ("Webb Depo.") Exs. 5-9.]  GC Services pays its account representatives by the hour and classifies them as "non-exempt" employees who are entitled to overtime compensation. [Id.; Doc. No. 1, Compl. ¶ 8.]  The account representatives are typically scheduled to work at least 40 hours per week.  [Doc. No. 26-2, Declaration of Brooke Gardner ("Gardner Decl.") ¶ 2.]

Named Plaintiff Brooke Gardner previously worked as an account representative at GC Services' call center in San Diego.  [Id.]  Plaintiff alleges that account representatives were required to perform certain "pre-shift" work on a daily basis (logging into the computer system, various software programs, and the telephone system); that the account representatives were uncompensated for the "pre-shift" work; and that if they failed to complete it, they were subject to discipline.  [Compl. ¶¶ 10-11, 15-16.]  Plaintiff also alleges that account representatives were required to work off the clock during meal periods and during "post-shift" periods.  [Id. ¶¶ 13-16.]

## II.    Procedural History

On March 24, 2010, Plaintiff filed a putative class action against GC Services in state superior court alleging causes of action for (1) failure to pay straight-time wages in violation of California Labor Code § 218; (2) failure to pay overtime wages in violation of 8 C.C.R. § 11040 and California Labor Code §§ 510 and 1198; (3) failure to pay compensation due at termination in violation of California Labor Code §§ 201-03; (4) violation of California Business and Professions Code §§ 17200, et seq.; and (5) quantum meruit.  [Doc. No. 1, Compl.]  On May 10, 2010, GC Services removed the action to this Court pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).  [Doc. No. 1, Notice of Removal.]

Because of a related action in the Eastern District of Missouri, GC Services filed a motion to dismiss, transfer, or stay the case pending resolution of the related action.  [Doc. No. 2.]  Shortly thereafter, Plaintiff filed a motion to remand the action back to state court.  [Doc. No. 4.]  On July 6, 2010, the Court denied GC Services' motion to dismiss and also denied Plaintiff's motion to remand to state court.  Thereafter, GC Services filed an answer.  [Doc. No. 15.]  On December 3, 2010, Plaintiff filed a motion for class certification.  [Doc. No. 26.]  GC Services opposed the motion.  [Doc. No. 32.]

After significant discovery, on February 1, 2011 and February 2, 2011, the parties engaged in a mediation session with experienced mediator Joan S. Morrow.  [Doc. No. 54-2, <u>Declaration of Jason M. Lindner</u> ("<u>Lindner Decl.</u>") ¶ 2.]  Although the parties did not reach an agreement at the mediation, the parties continued to have settlement discussions and conducted data analysis that eventually resulted in an agreement to settle the action on May 19, 2011.  [<u>Id.</u> ¶ 3.]  The Court dismissed Plaintiff's motion for class certification without prejudice after the parties notified the Court that the case had settled.  [Doc. Nos. 49, 51.]  The parties drafted a Joint Stipulation of Settlement, [Doc. No. 54-2, <u>Linder Decl.</u> Ex. A ("<u>Class Settlement</u>")], and submitted that agreement to this Court for preliminary approval.  [Doc. No. 54.]

**III.    The Settlement**

Pursuant to the proposed settlement, CG Services agreed to pay $975,000 as the total settlement fund, without admitting liability, and to deposit the funds with a settlement administrator following final approval.  [<u>Class Settlement</u> §§ 2.22, 6.2.1, 7.4.1.]  The settlement fund equals the entire amount to be paid to the class, including attorneys' fees (not to exceed $292,500–30% of the total settlement fund), expert fees, costs of administration of settlement, litigation costs (not to exceed $20,000), and an incentive award to the named Plaintiff Brooke Gardner (not to exceed $3,000), but excluding employment taxes.  [<u>Id.</u> § 2.22, 6.3, 6.4.]

The class consists of all current and former "non-exempt" (i.e., overtime eligible) telephone-dedicated call center representatives who work or worked for GC Services at locations in California at any time between March 24, 2006 and June 15, 2011.  [<u>Id.</u> § 2.5.]  The parties estimated the size of the putative class at approximately 1,524 individuals.  [<u>Id.</u>]

Class members who wanted to opt-out had the obligation to notify the settlement administrator within 45 days after the initial mailing of the class notice.  [<u>Class Settlement</u> § 7.2.7.]  Every class member that did not opt-out from this settlement and submitted a claim form within sixty days will receive a cash payment from the settlement fund.  [<u>Id.</u> § 7.4.2.]  The amount of payment received will be calculated by determining the pro rata share of the funds based on each class member's amount of weeks worked within the relevant time period, but the amount for

each class member will be no less than $50.  [Id. § 6.7.2.]  In addition, the settlement agreement provides that if the amount claimed does not equal at least 50% of the settlement pool, the payments to qualified class members will be reapportioned so that at least 50% of the settlement pool is paid to the class members.  [Id. § 6.7.2(d).]  Unclaimed funds above the 50% minimum will revert back to GC Services.  [Id.]

In exchange, GC Services will receive a release from the class members of all wage and hour claims asserted in this action along with any wage and hour claims that could have been asserted.  [Id. §§ 2.28, 6.8.1-6.8.4.]  This release extends only to class members who do not opt-out of the class.  [Id. §§ 2.32, 6.8.1-6.8.4.]

**IV.    Preliminary Approval of the Settlement and Reaction of the Class Members**

On November 1, 2011, the Court preliminarily certified the class for settlement purposes, appointed class counsel, granted preliminary approval of the settlement, and ordered Plaintiff to disseminate notice of the settlement to the class members.  [Doc. No. 59.]  Notice was mailed to all 1,470 class members on December 9, 2011.  [Doc. No. 62-3, Declaration of Michael Bui ("Bui Decl.") ¶ 5.]  The notice provided class members with an opportunity to file a claim for monetary relief, opt out of the settlement, or object to the settlement.  [Doc. No. 63-2, Declaration of Jason M. Lindner ("Lindner Decl.") Ex. A.]  Out of the 1,470 notice packets mailed, 349 were returned by the post office as undeliverable.  [Doc. No. 62-3, Bui Decl. ¶ 6.]  After conducting an additional search for updated addresses, 280 of those notice packets were re-mailed.  [Id.]  Ultimately, 182 notice packets were undeliverable because the Claim Administrator was unable to find a deliverable address.  [Id.]

The Claims Administrator received a total of 489 completed claims forms, with 10 untimely claims and 2 deficient forms.  [Id. ¶ 7.]  The claim forms filed consisted of 33.26% of the class and 54.45% of the total class weeks worked.  [Id.]  The Claim Administrator has not received any requests to opt out of the class or objections to the settlement.  [Id. ¶ 8.]

///

///

**DISCUSSION**

When the parties reach a settlement agreement prior to class certification, the court is under an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). Thus, the court must first assess whether a class exists, and second, determine whether the proposed settlement is "'fundamentally fair, adequate, and reasonable.'" Id. (citations omitted). Accordingly, in the present case, the Court will first examine the propriety of class certification, followed by the fairness of the settlement agreement, and then the request for attorneys' fees, costs, and an enhancement award.

**I.      Class certification**

A plaintiff seeking a Rule 23(b)(3) class certification must first satisfy the prerequisites of Rule 23(a). Once subsection (a) is satisfied, the purported class must then fulfill the requirements of Rule 23(b)(3). In the present case, the Court had previously preliminarily certified a class consisting of:

> [A]ll current and former non-exempt (i.e., overtime eligible) telephone-dedicated representatives who work or worked for Defendant, its parents, subsidiaries, affiliates, predecessors or assigns at locations in California at any time between March 24, 2006 and June 15, 2011 ("Class Period"), estimated at approximately 1524 but to include up to 1600 individuals.

[Doc. No. 59 at 4, 8.] At that time, the Court concluded that the proposed classes satisfied the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). [Id. at 5-6.] The Court also found that the proposed classes satisfied the predominance and superiority requirements of Rule 23(b)(3). [Id. at 7-8.] Having reviewed those elements again, the Court adopts its prior analysis in this regard. Accordingly, because Plaintiff has satisfied the requirements of both Rule 23(a) and Rule 23(b)(3), the Court **GRANTS** certification of the class for the purposes of settlement.

**II.     The Settlement**

Federal Rule of Civil Procedure 23(e) requires the court to determine whether a proposed settlement is "'fundamentally fair, adequate, and reasonable.'" Staton, 327 F.3d at 959 (quoting

1    Hanlon, 150 F.3d at 1026). To make this determination, the court must consider a number of

2    factors, including: (1) the strength of plaintiff's case; (2) "'the risk, expense, complexity, and

3    likely duration of further litigation;'" (3) "the risk of maintaining class action status throughout the

4    trial;" (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of

5    the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

6    participant; and (8) the reaction of the class members to the proposed settlement. See id. (quoting

7    Molski v. Gleich, 318 F.3d 937, 953 (9th Cir. 2003)).  In addition, the settlement may not be the

8    product of collusion among the negotiating parties.  In re Mego Fin. Corp. Sec. Litig., 213 F.3d

9    454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir.

10   1992)).

11           A.      The strength of Plaintiff's case, the risk, expense, and likely duration of further
12                   litigation, and the risk of maintaining class action status throughout the trial

13           Plaintiff may have a meritorious case, but Defendant has represented that it will vigorously

14   contest Plaintiff's claims.  [Doc. No. 54 at 8.]  The disputed factual and legal issues would be

15   complex and costly to resolve at trial.  In addition, settlement at this time would be beneficial

16   because a case pending before the California Supreme Court has the potential to change the

17   analysis of the class's meal and rest break claims.  [Id.]  See Brinker Restaurant Corp. v. Sup. Ct.,

18   85 Cal. Rptr. 3d 688 (Cal. 2008).

19           The action was only at the class certification stage when settlement was achieved.

20   Therefore, a significant amount of the case remained to be litigated, including additional

21   discovery, summary judgment motions, expert reports, trial and subsequent appeals.  The

22   settlement prevents the likely expense, complexity, and long duration of the remaining litigation

23   from impairing or delaying relief to the class members.  In addition, because settlement was

24   reached prior to a hearing on Plaintiff's motion for class certification, settlement was reached at a

25   time when there was still a risk that the class would not be certified by the Court.  Accordingly, the

26   Court agrees that the actual recovery through settlement confers substantial benefits on the class

27   that outweighs the potential recovery that could have been obtained through full adjudication.

28   ///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

B.      The amount offered in settlement

In the present case, the proposed settlement provides class members with immediate monetary relief, with an average award of around several hundred dollars and a minimum award of $50.  [Doc. No. 62-1 at 2-3.]  This settlement is a good result for the class and eliminates the risks, expenses, and delay associated with continued litigation.  Accordingly, the Court finds the amount offered in settlement weighs in favor of granting final approval of the settlement.

C.      The extent of discovery completed and the stage of the proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "'formal discovery is not a necessary ticket to the bargaining table.'"  Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting In re Chicken Antitrust Litig., 669 F.2d 228, 241 (5th Cir.1982)).

In the present case, the parties appear to have engaged in substantial and exhaustive informal and formal discovery.  The settlement represents the culmination of over seven months of negotiation, including negotiations at a mediation session.  [Class Settlement § 3.4.]  Counsel for both parties have conducted significant discovery and analysis of data in arriving at the settlement, including reviewing and analyzing the time entry data for the class members in order to estimate a fair and reasonable recovery for them.  [Doc. No. 54-2, Lindner Decl. ¶¶ 2-3.]  Class counsel was therefore able to negotiate the settlement based on a full evidentiary record and a thorough understanding of the strengths and weaknesses of the claims.  Accordingly, the parties' extensive investigation, discovery, and subsequent settlement discussions weigh heavily in favor of granting final approval.

D.      The experience and views of counsel

Plaintiff's counsel has extensive experience acting as class counsel in complex class action cases including wage and house class actions.  [See Doc. No. 26-3, Declaration of Eric Lindner ("Lindner Decl.") Ex. J; Doc. No. 26-5, Declaration of Mark Potashnick ("Potashnick Decl.") ¶¶ 4-8, Ex. A; Doc. No. 57, Declaration of J. Farrest Taylor ("Taylor Decl.") ¶¶ 2-4, Exs. A-B; Doc. No. 58, Declaration of G. Patrick Jacobs ("Jacobs Decl.") ¶¶ 1-11.]  Accordingly, because counsel

believes the present settlement is both fair and adequate, this also weighs in favor of granting final approval.

E.      The reaction of the class members to the proposed settlement

After dissemination of the class notice to the 1,470 members, which provided each class member with the terms of the settlement and with an option to opt-out or file an objection, not one class member has filed an objection or a request for exclusion.  [Doc. No. 62-3, Bui Decl. ¶ 8.] The absence of any objector strongly supports the fairness, reasonableness, and adequacy of the settlement.  See In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." (citations omitted)); Boyd v. Bechtel Corp., 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the class has filed no opposition).

Moreover, there was a total of 489 claim forms returned, which amounts to 54.45% of the total class weeks worked.  This is a significant return rate that also strongly supports the fairness, reasonableness, and adequacy of the settlement.  Accordingly, the overall reaction of the class members weighs in favor of granting final approval.

F.      Collusion between the parties

The collusion inquiry addresses the possibility the agreement is the result of either overt misconduct by the negotiators or improper incentives of certain class members at the expense of other members of the class.  Stanton, 327 F.3d at 960.  In the present case, because there is no evidence of overt misconduct, the Court's inquiry focuses on the aspects of the settlement that lend themselves to self-interested action.

The $3,000 incentive award for Plaintiff Gardner does not to appear to be the result of collusion.  The Court evaluates incentive awards using "'relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation.'"  Staton, 327 F.3d at 977 (quoting

1    Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)).  In the present case, Plaintiff has protected

2    the interests of the class by engaging in investigation and discovery, attending a deposition, and

3    assisting counsel with other aspects of the case.  [Doc. No. 54-2, Lindner Decl. ¶ 5.]  Therefore,

4    the $3,000 enhancement award to Plaintiff appears to be reasonable in light of her efforts in this

5    litigation.

6           Finally, the attorneys' fees also do not appear to be the result of collusion.  Plaintiff's

7    counsel may simultaneously negotiate the merits of the action and their attorneys' fees.  Stanton,

8    327 F.3d at 971.  As discussed in more detail below, the Court finds reasonable the recovery of

9    attorneys' fees, litigation costs, and administration costs sought by Plaintiff's counsel.

10          For the foregoing reasons, the Court finds that the settlement in this case is "fair,

11   reasonable, and adequate."  FED. R. CIV. P. 23(e)(2); Staton, 327 F.3d at 959.  Accordingly, the

12   Court **GRANTS** Plaintiff's motion for final approval of the settlement.

13   **III.    Attorneys' fees and costs for class counsel**

14          The settlement agreement provides that Class Counsel may recover an award of costs in

15   administering the settlement, litigation costs up to $20,000, and attorneys' fees up to $292,500.

16   [Class Settlement §§ 2.22, 6.6.1.]  Parties to a class action may appropriately negotiate the

17   payment of attorneys' fees and costs in conjunction with the settlement of the action itself.  See

18   Evans v. Jeff D., 475 U.S. 717, 734-35 (1986).

19          In the present case, the settlement agreement provides that Plaintiff's counsel could recover

20   an award of litigation costs up to $20,000.  [Class Settlement § 2.22.]  Because Plaintiff's counsel

21   has already incurred litigation costs in the amount of $22,649.61, [Doc. No. 63-2, Lindner Decl. ¶

22   4], the Court finds the award of $20,000 to be reasonable.  Similarly, the request of $17,000 in

23   costs for administering the settlement is reasonable in light of the fact that it is less than the

24   $25,000 that was set aside by the settlement agreement for administration costs.  [Class Settlement

25   § 6.6.1.]

26          With respect to the attorneys' fees, the Ninth Circuit has established a 25% "benchmark"

27   for common fund cases.  Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

28

1    This "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when

2    special circumstances indicate that the percentage recovery would be either too small or too large

3    in light of the hours devoted to the case or other relevant factors." Six (6) Mexican Workers v. Az.

4    Citrus Growers, 904 F.2d 1301, 1311 (1990).

5           Regardless of whether the court uses the percentage approach or the lodestar method, the

6    main inquiry is whether the end result is reasonable.  Powers v. Eichen, 229 F.3d 1249, 1258 (9th

7    Cir. 2000).  The Ninth Circuit has identified a number of factors that may be relevant in

8    determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the

9    skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried

10   by class counsel; and (6) the awards made in similar cases.  See Vizcaino v. Microsoft Corp., 290

11   F.3d 1043, 1048-50 (9th Cir. 2002).  Nonetheless, an explanation is necessary when the district

12   court departs from the "benchmark" of 25% of recovery.  Powers, 229 F.3d at 1256-57.  The Court

13   turns to each of these factors in turn.

14          First, the results achieved in this case were very favorable.  Class members are provided

15   with immediate monetary relief, with an average award of around several hundred dollars and a

16   minimum award of $50.  [Doc. No. 62-1 at 2-3.]  Second, as detailed above, the risks of litigation

17   were real and substantial.  Third, the complexity and potential duration of the case, coupled with

18   the intensity of settlement negotiations, weighs in favor of departing from the 25% "benchmark."

19   Fourth, class counsel took this case on a contingent fee basis and had to forego other financial

20   opportunities to litigate it.  [Doc. No. 63-1 at 5-6.]  Fifth, the request for attorneys' fees in the

21   amount of 30% of the common fund falls within the range of acceptable attorneys' fees in Ninth

22   Circuit cases.  See Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010)

23   (noting that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33

24   1/3% of the total settlement value, with 25% considered the benchmark"); Singer v. Becton

25   Dickinson & Co., 2010 U.S. Dist. LEXIS 53416, at *22-23 (S.D. Cal. Jun. 1, 2010) (noting that

26   the amount of 33.33% of the common fund for a wage and hour class action settlement "falls

27   within the typical range of 20% to 50% awarded in similar cases").  Finally, class counsel has

represented that the 30% figure is less than the amount that would have been calculated using the lodestar method.  [Doc. No. 63-2, Lindner Decl. ¶ 3.]  Cf. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 944-45 (9th Cir. 2011) (encouraging district courts to cross-check their calculations under the percentage-of-recovery method against the lodestar method).

For all of the foregoing reasons, the Court believes that a departure from the 25% "benchmark" is warranted in this case.  This is especially so in light of the fact that not a single class member objected to Plaintiff's counsel's intent to seek up to $292,500 in attorneys' fees. Accordingly, the Court finds that the attorneys' fees and costs requested are reasonable and **GRANTS** Plaintiff's motion for attorneys' fees and costs.

## IV.     Enhancement award for class representative

Finally, the $3,000 incentive award for Plaintiff Brooke Gardner also appears to be reasonable. "The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995) (citations omitted).

In the present case, the above factors weigh in favor of approving the enhancement award requested.  Plaintiff has protected the interests of the class by engaging in investigation and discovery, attending a deposition, and assisting counsel with other aspects of the case.  [Doc. No. 54-2, Lindner Decl. ¶ 5.]  Plaintiff has undergone the personal risk of stepping forward as a named plaintiff and testifying against former friends and colleagues.  [Id.]  Further, Plaintiff is directly responsible for the monetary benefits conferred on the class by the settlement.  Finally, no class members have objected to Plaintiff's intent to seek an enhancement award of $3,000.

The $3,000 incentive award is also well within the acceptable range awarded in similar cases.  See, e.g., Fulford v. Logitech, Inc., 2010 WL 807448, at *3 n.1 (N.D. Cal. 2010) (collecting cases awarding service payments ranging from $5,000 to $40,000).  Accordingly, the Court finds

the enhancement award requested to be reasonable and **GRANTS** Plaintiff's motion for an enhancement award.

**CONCLUSION**

For the foregoing reasons, the Court: (1) **CERTIFIES** the proposed class; (2) **GRANTS** final approval of the settlement; (3) **GRANTS** the request for award of attorneys' fees and costs and **AWARDS** Class Counsel litigation costs in the amount of $20,000, settlement administrative costs in the amount of $17,000, and attorneys' fees in the amount of $292,500; and (4) **GRANTS** the request for an enhancement award and **AWARDS** Plaintiff Brooke Gardner a class representative enhancement award in the amount of $3,000.

**IT IS SO ORDERED.**

**DATED:** April 2, 2012

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**